IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| CYBERNET ENTERTAINMENT, LLC<br><br>       Plaintiff,<br><br> vs.<br><br>IGOR KOVALCHUK a/k/a "VINCE," d/b/a DRTUBER.COM; ERA TECHNOLOGIES, LTD.; EXTRON WORLDWIDE CORP.; and JOHN DOES 1-50,<br><br>       Defendants. | CASE NO. 0:12-CV-60660-RNS |

**DEFENDANTS' CONSOLIDATED (1) REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO QUASH AND (2) OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR ORDER PERMITTING SERVICE BY ALTERNATE MEANS**

*"I'm shocked, shocked to find that gambling is going on in here."*
*                           Captain Renault in Casablanca*

  Who could have predicted it?

  Having chosen to ignore the requirements for service of process and having nevertheless knowingly filed with this Court an improper return of service (based on an argument which the Plaintiff admits has never been recognized by any court) which resulted in a default entering against the Defendants (which the Plaintiff now concedes cannot stand), the Plaintiff now asks that its intentional manipulations be ignored and, indeed, that its malfeasance be rewarded and alternative service be allowed *nunc pro tunc* because the Defendants are now present before this Court as a direct result of the Plaintiffs' procedural shenanigans. It is, to a word, what the Defendants predicted the Plaintiff would do. That the Plaintiff *still* asks the Court to reward its misrepresentations (despite having been called on them) is perhaps the ultimate in hubris – or simply a misplaced belief that it can do as it pleases without any repercussions from this Court.

  In either case, however, the Plaintiff should not be permitted to artificially manufacture a

situation where the Defendants are required to appear lest an improperly entered default stand, and then claim that the coerced appearance is good grounds for the Plaintiff to be relieved of its obligation to follow the rules of service applicable to all other litigants.  Accordingly, the Defendants' Motion to Quash and for the award of sanction should be granted and the Plaintiff's Cross-Motion for the allowance of alternative service *nunc pro tunc* should be denied.  In support of this Consolidated Reply and Opposition, the Defendants rely on their original motion and state further as follows.

### Argument

A.  The Plaintiff's Argument Concerning Its So-Called "Service" on DrTuber's DMCA Agent is Frivolous.

The Plaintiff starts its argument by incorrectly stating that any service of process which (the Plaintiff) deems sufficient to put the Defendants on notice of the case is sufficient service of process.  To make this argument, however, the Plaintiff is required to close its eyes to the voluminous case law from Florida's state and federal courts, which have repeatedly held that "statutes governing service of process should be strictly construed, and valid service on a corporation may be effected only by complying with such statutes. ...Absent strict compliance, the court lacks personal jurisdiction over the corporation." *Bank of Am., N.A. v. Bornstein*, 39 So. 3d 500, 502 (Fla. Dist. Ct. App. 4th Dist. 2010). *See also Dade Erection Serv. v. Sims Crane Serv.*, 379 So. 2d 423, 425 (Fla. Dist. Ct. App. 2d Dist. 1980; *Carcamo v. Norgas Carriers AS*, 2010 U.S. Dist. LEXIS 74363, *7 (S.D. Fla. 2010).

The Plaintiff nevertheless continues, acknowledging that it is not aware of a single case – anywhere – in which service on a DMCA agent was deemed sufficient or proper service of process, but urging the Court to nevertheless find such service proper, because the Plaintiff finds

2

it logical that the Court do so.[1] The Plaintiff, however, is not permitted to substitute its judgment for that of the Courts and the legislature, which have outlined specific methods of service and required "strict compliance" therewith. Additionally, it bears repeating that Constantin Lucien is the DMCA agent for Defendant ERA Technologies, Ltd. *only*. He has no relationship whatsoever with Defendants Igor Kovalchuk or Extron Worldwide Corp., neither of whom have ever met with Mr. Lucien, communicated with him in any fashion, or entered into any agreement with him.

Perhaps most shockingly, however, is that the Plaintiff next cites *Fonar v. Tariq Contracting, Inc.*, 885 F. Supp. 56 (E.D.N.Y. 1995) as supposedly supporting the general proposition that service on the agent of a foreign corporation is sufficient service of process so long as such service is reasonably calculated to inform the defendants of the action. *Fonar* says nothing of the sort. For comparison's sake, however, it is instructive to note what the Court *did* hold in *Fonar*. In *Fonar,* the Plaintiff made service an individual who the Court held had been "held out and acted as [the defendant's] vice president." *Fonar* at 58. Indeed, the Court specifically found there that the individual who had been served:

> cannot be viewed as a 'limited agent.' ...TCI intended that Ms. Husain would be more than a limited agent. Ms. Husain was, in every transaction with Fonar, acting in a much greater capacity than that of an attorney or accountant. Ms. Husain signed the relevant contracts on behalf of TCI, assisted in negotiations and subsequent dealings, and was the eyes and ears of TCI in the United States.

*Id. at 61.*

In the present case, by comparison, service was made on Mr. Luchian, a stranger to two of the defendants allegedly served, and the DMCA agent for ERA Technologies, with the

---

[1] Plaintiff's logic is far too simplistic. The Plaintiff argues that, because a DMCA agent accepts takedown notices, which the Plaintiff analogizes to a small-c "complaint," it must also be authorized to accept service of legal process (a capital-c "Complaint.") This is a lot like saying that the teenager counter-person at McDonalds must be able to accept service of process on the multinational corporate entity because, after all, when the fries are cold, it is the counter-person who receives the customer's complaint.

3

circumscribed role of forwarding DMCA takedown notices to ERA. Mr. Luchian was never held out to the Plaintiff (or anyone else) as anyone other than ERA Technologies' DMCA agent. He conducts no other business for ERA Technologies and has no authority to act as a general agent. For the Plaintiff to argue that the situation in the present case has any resemblance to the facts of *Fonar* is simply absurd.

Finally, the Plaintiff states – without support in case law or common sense – that it is the "responsibility of a registered agent of any type to receive and forward formal documents." This is simply contrary to the law. "State and federal courts have consistently held that limited agents... are not required to accept service on behalf of their clients." *Fona, supra* at 61, *quoting Davis-Wilson v. Hilton Hotels Corp.*, 106 F.R.D. 505, 508 (E.D. La. 1985). *See also Farm Credit of Northwest Fla., ACA v. R & B Constr. of S. Ala., Inc.,* 2009 U.S. Dist. LEXIS 92839 (S.D. Ala. 2009)("Accordingly, the mere fact that a person acts as the defendant's agent for some purposes does not necessarily mean that the person has authority to receive the summons and complaint"), *quoting* 4A Wright & Miller, Federal Practice & Procedure Civ.3d § 1097; *Hunter Douglas Metals Div. of Hunter Douglas v. Aluminio Conesa S.A. de C.V.,* 1997 U.S. Dist. LEXIS 7344 (N.D. Ill. 1997)("an agent must have actual authority for service of process upon him to be effective as to his principal"); *Newton v. Brook Hansen, Inc.,* 1994 U.S. Dist. LEXIS 13512 (E.D. La. 1994)("Agents for service of process must be expressly appointed.")

Indeed, by way of analogy, in patent cases, a foreign patent holder may appoint an agent "in the United States on whom may be served notices or process in proceedings affecting the mark." 15 U.S.C. §1051(e). One might think that such an agent would, by operation of law, much more likely to be required to accepts service of process than a DMCA agent, since the patent agent, once appointed, is specifically authorized to accept service of "process in

4

proceedings affecting the mark."  Nevertheless, some courts have held the appointment of such an agent does not constitute the appointment of an agent for the service of a civil complaint involving the patent (as opposed to a *proceeding* before the PTO).  *See, e.g., Outboard Marine Corp. v. Chantiers Beneteau Societe Anonyme Z.I. Des Mares,* 687 F.Supp. 366 (N.D. Ill. 1988)(finding insufficient service of a civil complaint on the defendant's agent for service of patent proceedings).

In the present case, the facts are much more compelling.  Mr. Luchian is not authorized to accept service of *any* kind of process on behalf of the defendants.  The Plaintiff's argument that service on Mr. Luchian was proper is simply without basis in fact or law and must be rejected.

    B.    Plaintiff's Argument That Service on Attorney Val Gurvits Was Effective Is Equally Frivolous.

Plaintiff next argues that service was proper because a copy of the Complaint was served on Attorney Val Gurvits, who had previously represented the Defendants in unrelated proceedings.  Here, too, the Plaintiff's argument requires a willful disregard of all pertinent case law.  "A person's attorney is not authorized to receive process simply because of his status as attorney. Service of process is not effectual on an attorney solely by reason of his capacity as an attorney. The party must have appointed his attorney as his agent for service of process before personal jurisdiction is obtained over the party by service on his attorney." *Durbin Paper Stock Co. v. Hossain*, 97 F.R.D. 639 (S.D. Fla. 1982); *Bennett v. Circus U.S.A.,* 108 F.R.D. 142, 147 (N.D. Ind. 1985)("Courts have consistently held that for an attorney to be considered an agent for process, he must have been appointed for that precise task.  ...Courts will not consider the fact that the attorney represented the defendant in an unrelated matter as evidence of an appointment for service of process")(numerous citations omitted); *Newton v. Brook Hansen, Inc.,* 1994 U.S. Dist. LEXIS 13512, 5-6 (E.D. La. 1994)("As stated previously by this Court, 'service cannot

5

generally be made on an attorney retained by a corporate defendant, unless the attorney has been specifically authorized and designated by defendant to receive service of process'"); *Arthur v. Litton Loan Servicing, LP*, 249 F. Supp. 2d 924, 930 (E.D. Tenn. 2002)("However, the mere attorney-client relationship between a defendant and his attorney does not, in itself, convey the specific authority necessary for the attorney to receive service of process on the defendant's behalf.")

In the end, the Plaintiff again has confused what the law *is* with what it believes the law *should be*. Or, perhaps more accurately, it simply does not believe that the law that applies to other litigants applies to it. Whichever the case, the Plaintiff's argument is frivolous.

    C.    The Plaintiff Should Not Be Rewarded For Its Tactical Decision To Ignore The Rules and Case Law Governing Service of Process.

None of this has happened by accident. Plaintiff's counsel is neither inexperienced nor ignorant of the rules. The Plaintiff's actions were a calculated strategy. The Plaintiff *could have* sought this Court's leave to utilize alternative service prior to acting, but it chose not to do so. The Plaintiff could have sought approval of the Court prior to filing a Motion for Default based on service of process which it knew to be improper, but it chose not to do so. Instead, the Plaintiff chose to take for itself a power reserved to this Court. *See* Fed. R. Civ. P. 4(f)(3), permitting alternative service "as the Court orders," intending all along to force the Defendants to appear (at the peril of a default), so that it could then ask this Court to retroactively approve its malfeasance. If the Plaintiff is permitted to subvert the Court's rules in this manner, there will be no reason for any litigant to ever adhere to proper procedure, since they can always get the Court to retroactively approve what the litigant itself deemed to be "good enough" service of process.

It is the Plaintiff's burden to demonstrate a need for alternative service, which it has failed to do. *Ortiz v. Green Bull, Inc.,* 2011 U.S. Dist. LEXIS 131598 (E.D.N.Y. 2011)("Thus,

6

the Court finds that the Plaintiff has not satisfied its burden of showing that service on Green Bull by serving Chris Prentice or Thomas Greco would be impracticable so that it would warrant granting leave to serve Green Bull by alternative means"); *Progressive Southeastern Ins. Co. v. J & P Transp.*, 2011 U.S. Dist. LEXIS 73946 (N.D. Ind. 2011)(denying alternative service where Plaintiff failed to first use "reasonable diligence" in attempting traditional service); *Henry v. Black*, 2011 U.S. Dist. LEXIS 11473 (D. Utah 2011)(denying alternative service where "it appears that Plaintiff has taken no efforts to locate Defendant, let alone reasonably diligent efforts"); *Alvarez v. County of Maricopa,* 2010 U.S. Dist. LEXIS 62121, 32-33 (D. Ariz. 2010)("Plaintiff has made only one attempt to serve Ava Arpaio, and the Court does not find that this is sufficient to show that personal service is impracticable.")

Indeed, concerns of foreign comity and respect for international treaties counsels that the Plaintiff should first attempt service on the Defendants through the Hague Convention. *C & F Sys., LLC v. Limpimax, S.A.*, 2010 U.S. Dist. LEXIS 973, 5-7 (W.D. Mich. 2010). In *Limpimax*, the Court faced near-identical arguments to those raised by the plaintiff here. There, the Court held that:

> Plaintiff wishes to skip the express provisions of subsections (1) and (2) of Rule 4(f), in favor of the catchall provision allowing the court to order service "by other means not prohibited by international agreement" under Fed. R. Civ. P. 4(f)(3). This provision "serves as a safety valve for unanticipated situations . . . ." *4B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE* § 1133 at 313 (3d ed. 2002). "Rule 4(f)(3) is most likely to be employed when a foreign country's Central Authority fails to effect service within the six-month period provided by the Hague Convention or refuses to serve a complaint based on its own public policy or substantive law limitations." Id. at 313-14. Consequently, the better view is that Rule 4(f)(3) should be viewed as a "final effort to make service when other means have failed." *Marcantonio v. Primorsk Shipping Corp***.,** 206 F. Supp. 2d 54, 58 (D. Mass. 2002). Some cases have authorized alternative service under Rule 4(f)(3) without first resorting to traditional means of service... but these cases seem to ignore the requirements of international comity and accord insufficient weight to the methods of service officially sanctioned by the governments of both the United States and its sister nation. Therefore, even if other methods of obtaining service of process are technically allowed, principles of comity

encourage the court to insist, as a matter of discretion, n1 that a plaintiff attempt to follow foreign law in its efforts to secure service of process upon defendant. ...Additionally, a court's insistence that a plaintiff follow procedures sanctioned by foreign law can have an ancillary benefit in plaintiff's favor: a failure to employ the safe harbor procedures of the Inter-American Convention may make enforcement in Peru of any judgment difficult or even impossible.

The same holds true here.  The Plaintiff should not be permitted to blithely ignore international treaties and the Rules of Civil Procedure, simply because it finds it more expedient to do so.  The Plaintiff would demand due process before allowing itself to be haled into a foreign court and the Defendants should be entitled to no less in the Courts of the United States.

### Conclusion

For the reasons outlined herein and in the Defendants' Motion to Quash, the Defendants' Motion should be allowed and the Plaintiff's Cross-Motion should be denied.

Respectfully submitted,

/s/Evan Fray-Witzer
Evan Fray-Witzer, *pro hac vice*
Ciampa Fray-Witzer, LLP
20 Park Plaza, Suite 804
Boston, MA 02116
(617) 723-5630
Evan@CFWLegal.com

/s/Valentin Gurvits
Valentin Gurvits, *pro hac vice*
Boston Law Group, PC
825 Beacon Street, Suite 20
Newton, MA 02459
 (617) 928-1804
vgurvits@bostonlawgroup.com

John F. Bradley, Esq.
BRADLEY LEGAL GROUP, P.A.
15 Northeast 15 Avenue
Fort Lauderdale, FL 33301
(954) 523-6160
jb@bradlegal.com

ECF CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 23, 2012, I electronically filed the foregoing document with the Clerk of the Court using its CM/ECF System and a copy of the above document was served on counsel for the plaintiff, through the Court's CM/ECF system in accordance with FRCP 5.

/s/  John F. Bradley
John F. Bradley, Esq.