# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CYBERNET ENTERTAINMENT, LLC

                         Plaintiff,

       vs.

IGOR KOVALCHUK a/k/a "VINCE," d/b/a
DRTUBER.COM; ERA TECHNOLOGIES,
LTD.; EXTRON WORLDWIDE CORP.; and
JOHN DOES 1-50,

                        Defendants.

**CASE NO. 0: 12-cv-60660-RNS**

## DEFENDANT ERA TECHNOLOGIES' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

*"Now I'm coming to gobble you up," roared the troll.*

-- *The Three Billy Goats Gruff*,
Peter Asbjørnsen and Jørgen Moe[1]

Copyright troll[2] Cybernet Entertainment, LLC ("Cybernet") is engaging in a strategy of

attempting to drag foreign defendants into jurisdictions wholly unconnected to either party (or to

the allegations of the complaint), in the hope that the defendants will either settle frivolous

claims to avoid the expense of litigating in a far-flung locale or allow a default judgment to enter

against them.

       Cybernet – a New York limited liability company with its principal place of business in

California – brings the present action against Igor Kovalchuk (a Russian citizen and resident);

ERA Technologies, Ltd. (a company incorporated in the British Virgin Islands); and Extron

---

[1] Peter Christen Asbjørnsen and Jørgen Moe, *De tre bukkene Bruse som skulle gå til seters og gjøre seg fete, Norske Folkeeventyr,* translated by George Webbe Dasent in Popular Tales from the Norse, 2nd edition (London: George Routledge and Sons, n.d.), no. 37, pp. 275-276. Translation revised by D. L. Ashliman.

[2] *See Third Degree Films v. Doe,* 2012 U.S. Dist. LEXIS 142079 (D. Mass. 2012)("A copyright troll is an owner of a valid copyright who brings an infringement action 'not to be made whole, but rather as a primary or supplemental revenue stream.'") *quoting* James DeBriyn, Shedding Light on Copyright Trolls: An Analysis of Mass Copyright Litigation in the Age of Statutory Damages, 19 UCLA Ent. L. Rev. 79, 86 (2012).

Worldwide Corp. (a defunct corporation, previously incorporated in Panama).

None of the parties are located in Florida; none of the parties have substantial connections to Florida;[3] none of the alleged acts of infringement occurred in Florida; and Cybernet cannot (and does not) claim that the brunt of its alleged injuries were felt in Florida.

Because there is no jurisdiction over ERA Technologies in Florida, the present case against it must be dismissed under Fed.R.Civ.P. 12(b)(2).[4]  In further support, ERA Technologies states as follows.

## FACTS

The Plaintiff, Cybernet Entertainment LLC, is a New York limited liability corporation.  Complaint, ¶ 1.  Cybernet is registered in California and has its principal place of business in San Francisco, California.  *Id.*  Its production studio, offices and technology center is located in San Francisco, California.  *Id.* at ¶ 14.

Igor Kovalchuk is an individual who is a citizen and resident of Russia.  *See* Kovalchuk Affidavit, attached hereto as **Exhibit 1**.[5]  Mr. Kovalchuk is *not* the owner or operator of the DrTuber website, although he does manage technology for ERA Technologies, Ltd., the company which *does* own and operate the website.  *Id.* Although Cybernet has claimed that it has served Mr. Kovalchuk through ERA Technologies, Ltd.'s Digital Millennium Copyright Agent in Florida, this purported service was improper and Mr. Kovalchuk's Motion to Quash the purported service is currently pending before this Court.  *See* Defendant Igor Kovalchuk's Motion to (1) Quash Purported Proof of Service, (2) Set Aside Default, and (3) for Sanctions,

---

[3] The most Cybernet alleges is that three of ERA Technologies' minor service providers were located in Florida.  As discussed below, this is entirely for an exercise of personal jurisdiction.

[4] The present motion is limited to ERA Technologies because ERA is the only defendant to have been properly served.  See Defendant Igor Kovalchuk's Motion to (1) Quash Purported Proof of Service, (2) Set Aside Default, and (3) for Sanctions, D.E. 18, still pending before this Court.

[5] Consideration of affidavits is appropriate in the context of a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  *See*

D.E.. 18.  Mr. Kovalchuk, does not have an office in Florida, conducts no business in Florida, has no telephone number in Florida, has no employees in Florida, has no bank account in Florida, owns no real estate in Florida, pays no taxes in Florida, and has not appointed an agent for service of process in Florida.  *See* Kovalchuk Affidavit.  Indeed, Mr. Kovalchuk has never visited Florida or the United States.  *Id*.

ERA Technologies, Ltd. ("ERA") is a company incorporated in the British Virgin Islands.  *Id*.  ERA does not have an office in Florida, conducts no business in Florida, has no telephone number in Florida, has no employees in Florida, has no bank account in Florida, owns no real estate in Florida, pays no taxes in Florida, and has not appointed an agent for service of process in Florida. It does not maintain any servers in Florida or anywhere else in the United States.  *Id*.

Extron Worldwide Corporation ("Extron") is a now-defunct corporation which was previously incorporated in Panama.  *Id*.  When it was operational, Extron neither owned nor operated the DrTuber website. *Id*.  Extron did not have an office in Florida, conducted no business in Florida, had no telephone number in Florida, had no employees in Florida, had no bank account in Florida, owned no real estate in Florida, paid no taxes in Florida, and had not appointed an agent for service of process in Florida. It did not maintain any servers in Florida or anywhere else in the United States.  *Id*.

## ARGUMENT

I.    Legal Standard

"A court must dismiss an action against a defendant over which it has no personal jurisdiction."  *H.E.R.O., Inc. v. Self,* 2012 U.S. Dist. LEXIS 69044, *4 (S.D. Fla. 2012), citing *Verizon Trademark Servs., LLC v. Producers, Inc.,* 810 F. Supp. 2d 1321, 1323-24 (M.D. Fla.

2

2011).  "To withstand a motion to dismiss, the plaintiff must plead sufficient facts to establish a prima facie case of jurisdiction over the non-resident defendant's person."  *H.E.R.O., Inc.,* at *4, *citing Virgin Health Corp. v. Virgin Enters. Ltd.,* 393 F. App'x 623, 625 (11th Cir. 2010).

If the plaintiff meets its pleading burden, the defendant can challenge the plaintiff's allegations through affidavits or other competent evidence.  *H.E.R.O., Inc.*, at *4.  To survive the motion to dismiss, "the plaintiff must substantiate the jurisdictional allegations in the complaint by affidavits, testimony, or other evidence of its own.  The plaintiff must do more than merely reiterate the factual allegations in the complaint."  *Id.* (internal quotation marks and citations omitted).

In determining if the Court has jurisdiction over a foreign defendant, the Court employs a two-part analysis. First the Court "must determine whether the Florida long-arm statute provides a basis for personal jurisdiction."  *Sculptchair, Inc. v. Century Arts*, 94 F.3d 623, 626 (11th Cir. Fla. 1996).  If so, then the Court must also determine "whether sufficient minimum contacts exist between the defendants and the forum state so as to satisfy 'traditional notions of fair play and substantial justice' under the Due Process Clause of the Fourteenth Amendment."  *Id.*

II.     <u>ERA Is Not Subject to Jurisdiction Under Florida's Long Arm Statute</u>

Under Florida's long arm statute, jurisdiction can be either general or specific.  *H.E.R.O., Inc.*, at *7 (citations omitted).  General jurisdiction – which is codified at Fla. Stat. §48.193(2) – requires a demanding threshold showing that the Defendant was "engaged in substantial and not isolated activity within the state," such that the Defendant is shown to have "continuous and systematic general business contact with Florida."  *Id.* at *9 (numerous citations omitted).

Recognizing that it has no argument, the Plaintiff here limits its argument solely to specific jurisdiction under Florida Statute, §48.193(1)(a), which provides for jurisdiction where a

person, personally or through an agent,  is "operating, conducting, engaging in, or carrying on a

business or business venture in this state or having an office or agency in this state."  *See*

Complaint, ¶4.

      As a threshold matter, though, before the Court examines whether ERA was "doing

business in Florida" for the purposes of the long arm statute, Cybernet must plead sufficient facts

to demonstrate that its claims actually arose out of ERA's alleged contacts with Florida.  *Camp*

*Illahee Investors, Inc. v. Blackman*, 870 So. 2d 80, 85 (Fla. Dist. Ct. App. 2d Dist. 2003)("By its

terms, section 48.193(1) requires connexity between the defendant's activities and the cause of

action"); *General Tire & Rubber Co. v. Hickory Springs Mfg. Co.*, 388 So. 2d 264, 266 (Fla.

Dist. Ct. App. 5th Dist. 1980)("Section 48.193 specifically limits jurisdiction to causes of action

arising from the enumerated acts.  Therefore, it is necessary to show first that the cause of action

arose from an obligation or cause connected with the activities of the foreign corporation before

reaching the question as to whether the corporation was doing business within the state.

Appellants failed to show any connection between appellee's business activities in Florida and

the cause of action and therefore the court was correct in dismissing Hickory Springs as a party

defendant."); *Manus v. Manus*, 193 So.2d 236, 238 (Fla. 4th DCA 1966)("[S]ince the alleged

cause of action against this foreign corporation is not shown to have arisen out of an obligation

or cause connected with the activities of this foreign corporation in this state, we cannot reach

the question of whether or not this foreign corporation was doing business in this state."); *Am.*

*Baseball Cap v. Duzinski*, 359 So. 2d 483, 489 (Fla. Dist. Ct. App. 1st Dist. 1978)("it is

necessary that the alleged cause of action arise out of a transaction or operation connected with

or incidental to the activities of the nonresident in the State of Florida.")

      Here, Cybernet points to but four facts in support of its assertion that ERA was "doing

business" in Florida: (1) that, during some of the relevant times, the domain name for the

DrTuber website was registered through online domain name registrar Moniker.com, which

(apparently) is located in Florida; (2) that ERA appointed an agent located in Florida for the

limited purpose of receiving and forwarding take-down notices under the Digital Millennium

Copyright Act; (3) that ERA utilized the services of Segpay.com,[6] a payment processing

company, with U.S. Offices in Florida; and (4) that the DrTuber website, accessible anywhere in

the world, could be accessed in Florida.  None of these allegations have the proper connexity to

Cybernet's claims that third parties allegedly uploaded infringing materials to the DrTuber

website.

First, although it is true that – at one point in time – the DrTuber domain address was

registered through online domain name registrar Moniker.com, it is equally true that Cybernet's

claims are wholly unrelated to ERA's having registered its domain through Moniker.com.  A

domain registrar does nothing more than work with ICANN (the governing body of the internet)

to ensure that, when an address is typed into a web browser, the user is properly routed across the

Internet to the server where the desired information is stored.  Cybernet claiming that its claims

of infringement are causally related to the registration of the DrTuber domain name through a

Florida registrar is much like saying that any claim against any business could be brought in New

York because that is where Verizon is headquartered and they assign telephone numbers to

businesses for their use.  If this is true, then the owners of each of the 30 million websites

registered through Arizona-based registrar GoDaddy.com are also doing business in that state.[7]

The proposition is, on its face, absurd.

---

[6] Although ERA did not actually enter into an agreement with SegPayEU directly (see Kovalchuk Affidavit), some payments for the DrTuber website were processed through SegPayEu.  Accordingly, for purposes of the present motion only, ERA treats this allegation as if it were factually accurate.

[7] *See* **Exhibit 2**.

Nor do Cybernet's claims arise in any way from the fact that ERA has a DMCA agent located in Florida.  The presence of a limited agent within the state is only relevant to the question of "connexity" if the plaintiff's claims actually arise out of the wrongful act of the agent.  *See, e.g., Camp Illahee Investors, Inc. v. Blackman*, *supra* (finding that the presence of agents in Florida who promoted the camp and ran reunions and slide shows was irrelevant because the underlying claims were not related to the reunions or slide shows, but rather arose from events which transpired at the camp itself, in North Carolina).

Similarly, ERA's use of SegPay, an online payment processor (much like the better-known PayPal) is unconnected to Cybernet's claims (other than in the vaguest everything-in-the-world-is-connected) way.  Like PayPal, SegPay is simply an online service that allows websites to process credit card payments.  Indeed, even Cybernet's portrayal of SegPay as a Florida based company is not fully accurate.  SegPay was originally formed as a European Union payment processor (*see* **Exhibit 3**), and, although it does have offices in Florida, it also continues to operate throughout the EU and Globally, with offices in the UK and Cyprus (s*ee* **Exhibit 4**).[8]  In (indirectly) utilizing SegPayEU, ERA was not even utilizing the services of  a Florida-based company; it was utilizing the services of an online EU company.

Finally, the mere fact that the DrTuber website is accessible in Florida neither means that ERA took any action in Florida (it did not), nor does it mean that Cybernet's claims are causally connected to some action taken by ERA in Florida.

Even if Cybernet could demonstrate some tenuous causal connection, however, the actions alleged by Cybernet do not constitute ERA conducting business in Florida.  Under §48.193(1)(a), a defendant is only be deemed to be "carrying on a business or business venture in

---

[8] It is curious that the SegpayEU contact page attached to Cybernet's complaint omits SegPay's UK and Cyprus addresses.  The page attached to Cybernet's complaint is *not* the page that a user is directed to if he or she clicks on the "Contact Us" link from SegPay's website.

Florida either itself or through an agent," if its activities "considered collectively... show a general course of business activity in the state for pecuniary benefit."  *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996) (*citing Dinsmore v. Martin Blumenthal Assocs. Inc.,* 314 So.2d 561, 564 (Fla. 1975)).

Here, it is undisputed that ERA is incorporated in the British Virgin Islands.  It does not have an office in Florida, has no telephone number in Florida, has no employees in Florida, has no bank account in Florida, owns no real estate in Florida, pays no taxes in Florida, and has not appointed an agent for service of process in Florida. It does not maintain any servers in Florida or anywhere else in the United States.

For the purposes of §48.193(1)(a), it is not enough for a defendant to have *contacts* with Florida for it to be "doing business" in Florida such that jurisdiction is proper under the state's long arm statute.  *See, e.g., Mold-Ex., Inc. v. Michigan Technical Representatives, Inc.*, 2005 U.S. Dist. LEXIS 35470, *9-11 (N.D. Fla. 2005)("While MTR may have had 'continuous' telephonic and electronic communications with Mold-Ex at its office in Milton, Florida, as plaintiff contends... such communications cannot constitute 'conducting business' in Florida for purposes of satisfying the long-arm statute.  Similarly, that MTR sold automotive parts on behalf of Mold-Ex throughout the United States, as plaintiff further argues... does not support a conclusion that MTR was engaged in a business venture in Florida."); *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167-68 (11th Cir. 2005)("It is undisputed that neither Kass California nor Wolf maintained a Florida office or were licensed to conduct business in Florida. Horizon admitted that Kass performed all its work for Horizon out of its California offices. While Kass made telephonic and electronic communications from its California offices into Florida, these communications cannot constitute 'conducting business' in

7

Florida.   Moreover, the fact that Kass rendered in California professional services for the benefit of a Florida citizen was insufficient by itself to trigger the provisions of the Florida Long-Arm statute.  Additionally, we reject Horizon's suggestion that the assertion of jurisdiction was appropriate because Kass's ability to electronically access Horizon's Florida-based computer files allowed Kass to perform services as if it was in Florida.  The Long-Arm provision requires that a defendant conduct business in Florida, and therefore conducting business from a California office as if in Florida is insufficient under the plain text of the statute. Moreover, Horizon's contention that a company's physical location 'is rendered irrelevant in this electronic age,' belies the fact that state territorial boundaries remain relevant to jurisdictional inquiries. Accordingly, while the advances of the electronic age have undoubtedly facilitated the practice of interstate and global commerce, they cannot nullify the explicit requirements of the Florida Long-Arm statute. Because Kass physically performed all its work from its California offices, it cannot be argued that its remote access to Horizon's files constituted 'conducting business' in Florida as defined in FLA. STAT. ch. 48.193(1)(a)."); *Scharrer v. Fundamental Admin. Servs.,* 2012 U.S. Dist. LEXIS 168017, 12-13 (M.D. Fla. 2012)("[T]he Long-Arm provision requires that a defendant conduct business in Florida, and therefore conducting business from a[n] [out-of-state] office as if in Florida is insufficient under the plain text of the statute."  Scharrer and THMI assert in their complaint that the 'FAS Defendants are operating, conducting, engaging in, and carrying on business in [Florida].'  However, none of the Defendants have an office in Florida or are registered to do business or licensed to practice in Florida.  Zack and Anderson, in their personal capacities, do not have any clients in Florida, and FAS has only one client in Florida which generates less than one percent of its revenue nationwide.  Therefore, FAS, Zack, and Anderson do not qualify as conducting a business in Florida under the above-enumerated factors.

Furthermore, even if the Defendants' contacts with the state could be characterized as an ongoing business venture, the Eleventh Circuit has clearly stated that the business activity must occur within Florida."  (Citing *Horizon Aggressive Growth*, 421 F.3d at 1167, for "finding that less than five percent of gross revenue counseled against a finding of engaging in general course of business.")

Here, too, there is a complete absence of facts from which the Court could conclude that ERA was "conducting business in Florida" so as to bring it within the purview of chapter 48.193(1)(a).  Accordingly, Cybernet's complaint must be dismissed for lack of personal jurisdiction.

     III.    Personal Jurisdiction Cannot Be Exercised Over ERA Consistent With Constitutional Due Process Requirements.

Because the conduct alleged by Cybernet does not bring ERA within the confines of chapter 48.193(1)(a), the Court need go no further: the case must be dismissed for lack of personal jurisdiction. *See, e.g., Estate of Scutieri v. Chambers,* 386 Fed. App'x 951, 953 (11th Cir. 2010)("Because we conclude that Florida's long-arm statute does not extend to the defendants' conduct as alleged in the Complaint, we need not evaluate the due process implications.")

Nevertheless, even if the Court were to find that Cybernet had satisfied the requirements of Florida's long arm statute, it would then have to determine whether personal jurisdiction could be properly exercised over ERA consistent with the Due Process requirements of the Fourteenth Amendment of the United States Constitution.  There is no question that Cybernet fails this test as well.

In determining if the requirements of due process are met, the Court conducts another two-step inquiry.  First, the Court "must decide whether each defendant has established

'minimum contacts' with Florida. Second, [the Court] must determine whether the exercise of

personal jurisdiction would offend 'traditional notions of fair play and substantial justice.'"

*Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 258 (11th Cir. 1996).  "Only if both prongs of

the analysis are satisfied may a federal or state court exercise personal jurisdiction over a

nonresident defendant."  *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir. Fla. 1990).

A.     <u>ERA Did Not Have The Contacts Necessary With Florida</u>

"Where a forum seeks to assert specific personal jurisdiction over a nonresident

defendant, due process requires the defendant have 'fair warning' that a particular activity may

subject him to the jurisdiction of a foreign sovereign."  *Robinson,* 74 F.3d at 258*, citing Burger*

*King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985).  "This fair warning requirement is satisfied

if the defendant has 'purposefully directed' his activities at the forum... and the litigation results

from alleged injuries that "arise out of or relate to" those activities."  *Robinson,* 74 F.3d at 258

(citations omitted).   "Additionally, the defendant's conduct and connection with the forum must

be of a character that he should reasonably anticipate being hailed into court there."  *Id.* (multiple

citations omitted).  "The unilateral activity of those who claim some relationship with a

nonresident defendant cannot satisfy the requirement of contact with the forum State … it is

essential in each case that there be some act by which the defendant purposefully avails itself of

the privilege of conducting  activities within the forum State, thus invoking the benefits and

protections of its laws."  *Id., quoting Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

None of the four facts articulated by Cybernet are sufficient to satisfy the minimum

contacts prong of the analysis.  First, ERA's registration of the DrTuber website through

Moniker.com is not a sufficient (or even relevant) contact to satisfy due process requirements.

*See, e.g., Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 223 (4th Cir. 2002)

10

("[T]he mere act of registering the Domain Names in Virginia was deemed insufficient to provide personal jurisdiction."); *Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d 589, 595 (E.D. Va. 2003)("First, mere registration of the domain name with a company located in Virginia does not support personal jurisdiction in this state."); *America Online, Inc. v. Huang*, 106 F. Supp. 2d 848, 856-57 (E.D. Va. 2000)(registering a domain name does not subject defendant to personal jurisdiction where the registrar is located); *Heathmount A.E. Corp. v. Technodome.com*, 106 F. Supp. 2d 860, 867 (E.D. Va. 2000) ("It seems highly unlikely that Congress thought that the registration of a domain name was, of its own force, sufficient to establish personal jurisdiction over the domain name registrant in the state where the registrar is located."); *Proprietors of Strata Plan No. 36 v. Coral Gardens Resort Mgmt., Ltd.*, 2009 U.S. Dist. LEXIS 97704 (E.D. Va. 2009)("The registration of the domain name is insufficient to confer personal jurisdiction.")[9]

       Nor is this result surprising, given that it is essentially an extension of the long-stated proposition that "merely entering into a contract with a forum resident does not provide the requisite contacts between a [party] and the forum state." *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055, 1059 (11th Cir.1986). *See also Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.,* 792 F.2d 989, 993 (11th Cir.1986) ("Nor does the existence of a contract between the foreign defendant and a resident of the forum state automatically amount to "purposeful availment.")

       Next, the mere appointment of a limited agent in Florida cannot support a finding of minimum contacts in the absence of some wrongful act undertaken within the forum by the agent which gives rise to the cause of action. Indeed, chapter 48.193(1) specifically provides that the *acts* of an agent within Florida may confer jurisdiction. Cybernet's complaint fails, however,

---

[9] Many of the cases on point originate from Virginia because this is where Network Solutions – one of the largest domain name registrars – and its previous parent corporation VeriSign – the registry that oversees all ".com" registrations – are headquartered.

inasmuch as there is no allegation that the acts of ERA's DMCA agent somehow gave rise to Cybernet's claim of infringement.[10] *Consolidated Dev. Corp. v. Sherritt, Inc.,* 216 F.3d 1286, 1293 (11th Cir. 2000)("The casual presence of a corporate agent in the forum is not enough to subject the corporation to suit where the cause of action is unrelated to the agent's activities.").

In the absence of such an allegation, Cybernet's assertion is more akin to a claim that the mere appointment of a limited agent in Florida is sufficient to give rise to general jurisdiction. Even if this was what Cybernet intended to suggest, the argument fails as a matter of law. *See, e.g., Chipman, Ltd. v. Thomas B. Jeffery Co.,* 251 U.S. 373, 379 (1920)("Unless a foreign corporation is engaged in business within the State, it is not brought within the State by the presence of its agents"); *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437 (1952)("it is the corporate activities of the defendant, not just the mere designation of a statutory agent, that is helpful in determining whether the court has personal jurisdiction over the defendant."); *Consolidated Dev. Corp. v. Sherritt, Inc.,* 216 F.3d 1286, 1293 (11th Cir. 2000)("Courts of appeals that have addressed this issue have rejected the argument that appointing a registered agent is sufficient to establish general personal jurisdiction over a corporation."); *Sofrar, S.A. v. Graham Engineering Corp.*, 35 F. Supp. 2d 919, 921 (S.D. Fla.1999) (finding no general jurisdiction under Florida's long-arm statute, even though defendants appointed an agent for service of process and were registered to do business in the state); *Bankhead Enterprises, Inc. v. Norfolk & Western Railway Co.*, 642 F.2d 802, 805 (5th Cir. 1981); *Wenche Siemer v. Learjet Acquisition Corp.,* 966 F.2d 179, 183 (5th Cir.1992); *Ratliff v. Cooper Laboratories, Inc.*, 444 F.2d 745, 748 (4th Cir.1971).

---

[10] It would be particularly perverse for a defendant to be penalized for the appointment of a DMCA agent, whose role is to help deter copyright infringement.  Indeed, if the appointment of a DMCA agent were sufficient to subject website owners to personal jurisdiction in far-flung forums, the predictable result would be that fewer websites would appoint such agents.

Nor does ERA's alleged use of a payment processor with a location in Florida advance the minimum contacts analysis.  Even assuming that SegPay is a Florida based business (as opposed to an EU-based one) and even assuming that ERA had entered into an agreement with SegPay in Florida (which it did not), this would still amount to nothing more than "merely entering into a contract with a forum resident" which "does not provide the requisite contacts between a [party] and the forum state." *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055, 1059 (11th Cir.1986).   Indeed, Cybernet's argument was rejected by the Court in *Pres-Kap v. System One, Direct Access, Inc.*, 636 So.2d 1351 (Ct. App. Fla., 3rd Dist, 1994).  There, the Court held that the processing of payments in Florida for a transaction that otherwise took place in New York, did not result in the necessary minimum contacts for jurisdiction to exist in Florida.  *Id.* at 1353 ("The additional factor in this case that the computer database for the contracted-for information happens to be located in Florida cannot change this result. There is no showing on this record that the defendant was even aware of the exact electronic location of the subject computer database, as this clearly would have been of little importance to it.  The maintenance of the instant suit against the defendant, based on the totality of the circumstances, offends traditional notions of fair play and substantial justice -- and therefore does not comply with the minimum-contacts due process requirement which must be met before Florida may assume in personam jurisdiction over a nonresident defendant.")

The *Pres-Kap* court went on to note that:

...a contrary decision would, we think, have far-reaching implications for business and professional people who use "on-line" computer services for which payments are made to out-of-state companies where the database is located. Across the nation, in every state, customers of "on-line" computer information networks have contractual arrangements with out-of-state supplier companies, putting such customers in a situation similar, if not identical, to the defendant in the instant case. Lawyers, journalists, teachers, physicians, courts, universities, and business people throughout the country daily conduct various types of computer-assisted research over telephone lines linked to supplier databases

13

located in other states.  Based on the trial court's decision below, users of such "on-line" services could be hailed into court in the state in which supplier's billing office and database happen to be located, even if such users, as here, are solicited, engaged, and serviced entirely instate by the supplier's local representatives. Such a result, in our view, is wildly beyond the reasonable expectations of such computer-information users, and, accordingly, the result offends traditional notions of fair play and substantial justice.

*Id.  See also Fin. Inst. Track Litig. v. Heartland Bank (In re Heartland Payment Sys.)*, 2011 U.S. Dist. LEXIS 34953 (S.D. Tex. 2011)("Memberships in the Visa and MasterCard  networks does not subject Heartland Bank to personal jurisdiction in Texas."); *Project Honey Pot v. Does*, 2012 U.S. Dist. LEXIS 70659, *24-25 (E.D. Va. 2012)("Although the advent of complex global financial systems raises interesting questions of personal jurisdiction, technology cannot eviscerate the constitutional limits on a State's power to exercise jurisdiction over a defendant. Accordingly, the relationship between the defendant banks, which merely provide credit card processing services to the foreign-based merchants, who in turn advertise  their allegedly illegal services over the Internet and ultimately reach customers in Virginia, is far too attenuated to establish personal jurisdiction in this district")(internal citations omitted).

This leaves only Cybernet's allegation that ERA's operation of the DrTuber website, which is equally accessible anywhere in the world, establishes the minimum contacts necessary in Florida (and, presumably every other state and country where the internet can be accessed).  It is not a new argument for Cybernet's counsel, which has put forward identical arguments on behalf of another copyright troll, Fraserside IP, LLC:

> Although I accept as true Fraserside's allegations that Youngtek intentionally infringed Fraserside's registered copyrights and trademarks, these allegations, alone, fail to demonstrate that Youngtek "uniquely or expressly aimed" its tortious acts at Iowa. ...Although Youngtek's websites are both commercial and interactive, as an Iowa district court noted in a case presenting similar facts, such a website 'is arguably no more directed at Iowa than at Uzbekistan.' ...The district court concluded that because the website could be accessed anywhere, including Iowa, 'its existence does not demonstrate an intent to purposefully target Iowa.'"

14

*Fraserside IP, L.L.C. v. Youngtek Solutions, Ltd.,* 2013 U.S. Dist. LEXIS 3779, 31-32 (N.D. Iowa 2013)(internal citations omitted); *Fraserside IP L.L.C. v. Netvertising Ltd.,* 2012 U.S. Dist. LEXIS 180949 (N.D. Iowa 2012)("Although the HardSexTube.com website is both commercial and interactive, as an Iowa district court noted in a case presenting similar facts, such a website 'is arguably no more directed at Iowa than at Uzbekistan.' Thus, I conclude that Fraserside has failed to demonstrate that the Netvertising defendants' actions were performed for the very purpose of having their consequences felt in the forum state."); *Fraserside IP L.L.C. v. Letyagin,* 2012 U.S. Dist. LEXIS 109889 (N.D. Iowa 2012)("Although SunPorno's website is both commercial and interactive, as an Iowa district court noted in a case presenting similar facts, such a website 'is arguably no more directed at Iowa than at Uzbekistan.' Thus, I conclude that Fraserside has failed to demonstrate that defendants actions were performed for the very purpose of having their consequences felt in the forum state."); *Fraserside IP L.L.C. v. Hammy Media, LTD,* 2012 U.S. Dist. LEXIS 5359, 24-25 (N.D. Iowa 2012)("Although I accept as true Fraserside's allegations that xHamster intentionally infringed Fraserside's registered copyrights and trademarks, these allegations, alone, fail to demonstrate that xHamster 'uniquely or expressly aimed' its tortious acts at Iowa. Although xHamster's website is both commercial and interactive, as an Iowa district court noted in a case presenting similar facts, such a website 'is arguably no more directed at Iowa than at Uzbekistan.' The district court concluded that because the website could be accessed anywhere, including Iowa, its existence does not demonstrate an intent to purposefully target Iowa.").

These cases are consistent with the law in this jurisdiction and elsewhere. *See, e.g., Liberty Media Holdings, LLC v. Letyagin*, Civil Action No. 11-62107-CV-WILLIAMS (S.D. Fla. 2011)("Plaintiff has not shown that Defendant's conduct can, in line with the Constitution,

15

subject it to jurisdiction in this forum. Plaintiff contends that Defendant has 'considerable' web traffic originating from the United States and has presented an exhibit showing that fifteen percent of the visitors to its website are from the United States.  Precedent, however, establishes that maintaining a website accessible to users in a jurisdiction does not subject a defendant to be sued there; those users must be directly targeted, such that the defendant can foresee having to defend a lawsuit.");[11] *Verizon Trademark Services, LLC, supra* (holding that the operation of a website – even an interactive one – was an insufficient basis on its own to assert jurisdiction); *Roblor Marketing Group, Inc. v. GPS Industries, Inc.*, 645 F. Supp. 2d 1130 (S.D. Fla. 2009)(rejecting personal jurisdiction over the defendant, despite the defendant's operation of an interactive website accessible in Florida, because "traditional notions of due process" precluded an exercise of jurisdiction where the defendant "could not have foreseen being hailed in Florida. [The defendant] is not licensed to do business in Florida and has no income from direct Florida sales.  [The defendant] has no agents, resellers, and distributors, nor any presence whatsoever in Florida.  [The defendant] has never targeted Florida residents through an advertising campaign. There is no evidence that [the defendant] holds any bank account or has any investments in Florida..."); *Zamora Radio, LLC v. Last.FM, Ltd.*, 2011 U.S. Dist. LEXIS 69101 (S.D. Fla. 2011)(rejecting jurisdiction over foreign defendants who operate a highly interactive website because none of the activities were specifically aimed at Florida, as opposed to users of the internet world-wide); *Instabook Corporation v. Instantpublisher.com*, 469 F. Supp. 2d 1120 (M.D. Fla. 2006)(finding insufficient contacts in a patent infringement case since, among other reasons, "Defendant could not reasonably anticipate being hailed into court in Florida based on its operation of interactive websites accessible in Florida and its sales to two Florida residents" in

---

[11] Not coincidentally, Liberty Media (another copyright troll) was represented in that litigation by Cybernet's counsel, Marc Randazza.

the absence of 'targeting or solicitation of Florida residents'").  *See also Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 418-420 (9th Cir. 1997) (noting that maintaining a website was not sufficient to constitute "purposeful availment" without "something more" directly targeting the forum state); *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1390-91 (8th Cir. 1991) (*quoting Brainerd v. Governors of Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir. 1989)); *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) ("If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be hauled into court in that state without offending the Constitution."); *Quick Technologies, Inc. v. The Sage Group, PLC*, 313 F.3d 338, 345 (5th Cir. 2002)("Sage Group's operation of a website containing company and product information and links to U.S. subsidiaries also does not provide sufficient grounds for the exercise of personal jurisdiction."); *See, Inc. v. Imago Eyewear Pty, Ltd.*, 167 Fed. App'x 518, 522 (6th Cir. 2006)(upholding the district court's decision that jurisdiction could not be maintained because "the Defendants' website, did not provide sufficient contacts with the United States to satisfy due process.  We agree"); *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 451-452 (3d Cir. 2003)("The precise question raised by this case is whether the operation of a commercially interactive web site accessible in the forum state is sufficient to support specific personal jurisdiction, or whether there must be additional evidence that the defendant has 'purposefully availed' itself of the privilege of engaging in activity in that state. Prior decisions indicate that such evidence is necessary, and that it should reflect intentional interaction with the forum state."); *ESAB Group, Inc. v. Centricut, L.L.C.*, 34 F. Supp. 2d 323, 331 (D.S.C. 1999) ("While it is true that anyone, anywhere could access Centricut's home page, including someone in South Carolina, it cannot be inferred from this fact alone that Centricut deliberately directed its efforts

17

toward South Carolina residents."); *Johnson v. Arden*, 614 F.3d 785, 797-798 (8th Cir. 2010) ("[T]he Johnsons have failed to prove that www.BoutiqueKittens.com is uniquely or expressly aimed at Missouri.").

Because Cybernet has failed to allege sufficient minimum contacts with Florida to satisfy the Due Process requirements of the Fourteenth Amendment, the case must be dismissed for lack of personal jurisdiction.

        B.     The Exercise of Personal Jurisdiction Over ERA Would Offend Traditional Notions of Fair Play and Substantial Justice.

Finally, even if Cybernet had properly shown minimum contacts with Florida, the Court would still have to find that an exercise of personal jurisdiction over ERA comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985), *quoting Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 320 (1945). In making such a determination, the Court weighs the strength of the Plaintiff's case on minimum contacts with the forum such that the defendant should reasonably anticipate being haled into court there, with other factors which may still counsel against an exercise of jurisdiction. *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 258-59 (11th Cir. Fla. 1996). "These other factors are the burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the states in furthering fundamental substantive social policies." *Id.*

Here, these factors weigh in favor of ERA. Given that all of the evidence, witnesses, and documents will be located in the British Virgin Islands, Panama, or Russia, the cost of defending an action in Florida will be great. Even more poignantly, Florida has no interest at all in adjudicating the present dispute – the Plaintiff is a New York limited liability company with all

18

its operations in California.  ERA is a company located in the British Virgin Islands.  The other defendants are located in Russia and Panama.  Not a single act or omission which comprise the Plaintiff's allegations took place in Florida.  As such, Florida's interest in the present litigation is nonexistent.

Finally, to the extent that public policies are an issue at all, they do not favor an exercise of jurisdiction.  It is well established that "United States copyright laws do not have extraterritorial effect."  *National Enquirer, Inc. v. News Group News, Ltd.,* 670 F. Supp. 962, 970 (S.D. Fla. 1987).  *See also Palmer v. Braun,* 376 F.3d 1254, 1258 (11th Cir. 2004)("[F]ederal copyright law has no extraterritorial effect, and cannot be invoked to secure relief for acts of infringement occurring outside the United States.  Thus, it is only where an infringing act occurs in the United States that the infringement is actionable under the federal Copyright Act, giving the federal courts jurisdiction over the action."); *Foreign Imported Prods. & Publ., Inc. v. Grupo Indus. Hotelero, S.A.,* 2008 U.S. Dist. LEXIS 108705 (S.D. Fla. 2008)("Federal copyright law has no extraterritorial effect, and therefore it is only where an infringing act occurs in the United States that the infringement is actionable under the federal Copyright Act, giving the federal courts jurisdiction over the action.  Stated another way, district courts do not have subject matter jurisdiction over infringing acts that took place wholly outside the United States or entirely overseas."); *Subafilms, Ltd. v. MGM-Pathe Communications Co*., 24 F.3d 1088, 1094 (9th Cir. Cal. 1994)("Because the copyright laws do not apply extraterritorially, each of the rights conferred under the five section 106 categories must be read as extending no farther than the [United States'] borders.")  This being the case – and given that Cybernet has failed to allege a single wrongful act undertaken by ERA in Florida or the United States – public and social policies counsel against this Court exercising personal jurisdiction over ERA.

Because an exercise of personal jurisdiction over ERA would not comport with "fair play and substantial justice," the case should be dismissed for lack of personal jurisdiction.

## Conclusion

For the reasons stated herein, ERA respectfully requests that Cybernet's Complaint be dismissed in its entirety for lack of personal jurisdiction.[12]

Respectfully submitted,
ERA TECHNOLOGIES, LTD.
By its attorneys,

/s/Evan Fray-Witzer

Evan Fray-Witzer, *pro hac vice*
Ciampa Fray-Witzer, LLP
20 Park Plaza, Suite 804
Boston, MA 02116
(617) 723-5630
Evan@CFWLegal.com

/s/Valentin Gurvits

Valentin Gurvits, *pro hac vice*
Boston Law Group, PC
825 Beacon Street, Suite 20
Newton, MA 02459
 (617) 928-1804
vgurvits@bostonlawgroup.com

/s/ John F. Bradley

John F. Bradley, Esq.
BRADLEY LEGAL GROUP, P.A.
15 Northeast 15 Avenue
Fort Lauderdale, FL 33301
(954) 523-6120
jb@bradlegal.com
FL. Bar. No. 0779910

---

[12] "Snip, snap, snout.  This tale's told out."  *The Three Billy Goats Gruff, supra.*

<u>ECF CERTIFICATE OF SERVICE</u>

      I HEREBY CERTIFY that on January 23, 2013, I electronically filed the foregoing document with the Clerk of the Court using its CM/ECF System and a copy of the above document was served on counsel for the plaintiff, through the Court's CM/ECF system in accordance with FRCP 5.


           /s/  John F. Bradley
           John F. Bradley, Esq.